BAILEY, Plaintiff in error, v. STATE, Defendant in error.

*No. State 125. Argued October 3, 1974.—Decided October 29, 1974.*
(Also reported in 222 N. W. 2d 871.)

332

334

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg*, state public defender.

For the defendant in error the cause was argued by *David J. Becker*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

BEILFUSS, J. The plaintiff in error, hereinafter defendant, raises the following issues:

1. Did the county court have jurisdiction to try counts 2, 3 and 4 of the information when such charges were not contained in the criminal complaint and when no evidence was introduced at the preliminary hearing which would support bindover on such charges?

2. Was the defendant denied due process and equal protection of law by virtue of being denied a preliminary hearing on counts 2, 3 and 4 of the information herein?

3. Did the county court violate the provisions of sec. 971.12, Stats., and due process of law by denying defendant's motion to sever counts 2, 3 and 4 from count 1 of the information herein?

4. Was the prosecution of the defendant for counts 2, 3 and 4 undertaken in bad faith and did such prosecution constitute prosecutorial abuse of discretion?

5. Is the defendant entitled to a new trial on the charge of first-degree murder by virtue of the inclusion in the information of three lesser charges relating to

sex offenses because such lesser charges prejudiced the jury and denied the defendant due process of law?

6. Did the county court commit prejudicial error by admitting into evidence, over defense objections, a section of a bloodstained mattress, although the decedent in this case is never alleged to have bled?

7. Did the trial court err in failing to consider the supplemental jury instructions proposed by defendant, taken from sources other than the standard Wisconsin Jury Instructions—Criminal?

8. Was the evidence sufficient to convict this defendant of first-degree murder, enticing a child for immoral purposes, and attempting to entice a child for immoral purposes?

The complaint in this case charged Jack Bailey with only one crime—first-degree murder. The information filed subsequent to a preliminary hearing, however, contained four counts: first-degree murder (count 1); indecent behavior with a child (count 2); enticement of a child for immoral purposes (count 3); and attempted enticement of a child for immoral purposes (count 4).

The defendant does not argue there was not probable cause for him to be bound over on the first-degree murder count. With respect to the sex-related charges (counts 2, 3 and 4), however, the defendant contends that no evidence was introduced at the preliminary hearing to support them, that such failure deprived the trial court of jurisdiction and that therefore he was improperly tried. We conclude the trial court did have jurisdiction as to all four counts.

The established rule in Wisconsin is:

". . . The state in its information may allege acts in addition to those advanced on preliminary hearing so long as they are not wholly unrelated to the transactions or facts considered or testified to at the preliminary. *Mark v. State* (1938), 228 Wis. 377, 280 N. W. 299. . . ." *State v. Fish* (1963), 20 Wis. 2d 431, 438, 122 N. W. 2d 381.

See also: State ex rel. Kropf v. Gilbert (1933), 213 Wis. 196, 201, 251 N. W. 478; Jones v. State (1924), 184 Wis. 50, 55, 198 N. W. 598.

The defendant contends that this is no longer the rule, basing this conclusion on rather circular reasoning involving the meaning of sec. 970.03 (10), Stats., which provides:

"(10) In multiple count complaints, the court shall order dismissed any count for which it finds there is no probable cause. The facts arising out of any count ordered dismissed shall not be the basis for a count in any information filed pursuant to ch. 971. . . ."

By its own terms, this provision relates only to multiple count complaints, and does not affect a prosecutor's right to add additional, related counts to an information after a preliminary hearing. The defendant, however, refers to the revision committee's comments following the statute at 42A West's W.S.A. 129 as evidence of a contrary intent. Even if we were to disregard the rule of statutory construction forbidding resort to legislative intent when the wording of the statute is clear,[4] the defendant's contention cannot be accepted. The committee comment he refers to states:

"Sub. (10) is a new provision requiring a finding of probable cause as to each count in a multiple count complaint. If such a finding is not made as to any count, it shall be dismissed. This reverses the rule in Hobbins v. State, 214 Wis. 496, 253 N. W. 570."

The defendant claims that "the rule in Hobbins" which has been "reversed" by this subsection is the statement:

". . . The district attorney in filing his information is not limited by the complaint. . . . Nor is he limited by

---

[4] Milwaukee County v. Schmidt (1971), 52 Wis. 2d 58, 69, 187 N. W. 2d 777; Department of Revenue v. Dziubek (1970), 45 Wis. 2d 499, 504, 173 N. W. 2d 642.

the opinion of the magistrate as to the offense committed. . . ." *Hobbins v. State* (1934), 214 Wis. 496, 510, 253 N. W. 570.

From a reading of the case, the statute, and the comment, the above-quoted language is not the "rule" to which the comment refers. The statute and comment are directed at the holding of the court which permitted the trial court to assume jurisdiction over and try counts which had been included in the criminal complaint but were specifically dismissed by the presiding magistrate at the preliminary hearing. *Hobbins, supra,* pages 508–510.

In our view, sec. 970.03 (10), Stats., does not prohibit a prosecutor from including in the information, once a defendant has been bound over, charges in addition to those advanced at the preliminary hearing, "so long as they are not wholly unrelated to the transactions or facts considered or testified to at the preliminary." *State v. Fish, supra,* page 438. This view is consistent with the legislative statement in sec. 970.03 (1), that a preliminary hearing is held ". . . for the purpose of determining if there is probable cause to believe a felony has been committed by the defendant." Once it is determined that the defendant should be bound over for trial on at least one count, the purpose of the preliminary has been satisfied and the prosecutor may, in his discretion, allege such other offenses as permitted by the limitation stated above.

In this case, even assuming there was no evidence presented as to them at the preliminary, it is clear that the sex-related offenses, counts 2, 3 and 4, were not "wholly unrelated" to the murder count. They are related in terms of parties involved, witnesses involved, geographical proximity, time, physical evidence, motive and intent.

It is unnecessary to make the assumption, however, that there was no evidence presented at the preliminary

pertaining to counts 2, 3 and 4, or that such evidence would be insufficient to bind over on each of the counts independently. As stated in *State ex rel. Hussong v. Froelich* (1974), 62 Wis. 2d 577, 583, 215 N. W. 2d 390:

" 'It is well established in this state that the evidence at a preliminary hearing need not be sufficient to prove the charge against the defendant beyond a reasonable doubt. The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence.' "

With respect to count 2, taking indecent liberties with a female contrary to sec. 944.11, Stats., there was testimony at the preliminary by Dr. Schuster that the victim's body had pinpoint hemorrhages on the inside of the vaginal orifice and bruising on the labia minora. He also detected evidence of bleeding in the fluid removed from the vagina. Although Dr. Schuster found no proof of sexual assault or penetration, it was his opinion, stated at the preliminary, that there was vaginal injury caused by molestation, possibly by a finger.

As to count 4, attempting to entice a child for immoral purposes contrary to secs. 939.32 and 944.12, Stats., there was testimony at the preliminary by Paticia Crandall that the defendant had approached her in his car, opened the door and said, "Come here, little girl." When viewed in combination with the evidence regarding molestation of Rose Marie Ahnen who was last seen about the same time Paticia was approached, and in the same general area, and the evidence regarding the red boot next to defendant's car and the footprints leading towards the dump, all of

which was presented at the preliminary, it is clear there was adequate evidence to bindover on count 4 alone.

Count 3 alleges enticing a child, the deceased, for immoral purposes contrary to sec. 944.12, Stats. The evidence relating to count 4, when combined with the evidence relating to count 2, provided sufficient " '. . . competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, . . .' " *Hussong, supra,* page 583. As stated further on the same page of that opinion:

"The evidence educed at the preliminary hearing was totally circumstantial. Circumstantial evidence is, however, sufficient to support a finding of probable cause or guilt beyond a reasonable doubt. . . ."

There was ample evidence presented at the preliminary to support a finding of probable cause as to each of the counts contained in the information.

The defendant contends that because the complaint charged only murder and the information ultimately charged three additional counts, he was denied due process of law in that his attorney could not effectively represent him at the preliminary. He further alleges that he was denied equal protection of the law because, unlike himself, some defendants in criminal cases are apprised of the crime they are ultimately charged with prior to the preliminary hearing. We believe that both of these contentions are based on an overbroad conception of the purpose of the preliminary hearing.

The purpose of the hearing is to determine whether there is probable cause to believe that any felony has been committed by the defendant, such that he should be subjected to criminal prosecution and further deprived of his liberty.[5] Of course, both the State and the de-

[5] Sec. 970.03 (1), Stats.; *Taylor v. State* (1972), 55 Wis. 2d 168, 173, 197 N. W. 2d 805; *Court v. State* (1971), 51 Wis. 2d 683, 188 N. W. 2d 475.

fendant can possibly derive collateral benefits from the preliminary but they are incidental to its main purpose. As stated in *Whitty v. State* (1967), 34 Wis. 2d 278, 287, 149 N. W. 2d 557:

". . . There is no doubt a preliminary examination may be of great help to a defendant. We have recognized its by-products in *Tell v. Wolke* (1963), 21 Wis. (2d) 613, 620, 124 N. W. (2d) 655 (preliminary may serve as 'adverse examination' from defendant's point of view) ; *Sparkman v. State* (1965), 27 Wis. (2d) 92, 100, 133 N. W. (2d) 776 (preliminary may help defense by permitting cross-examination of state witnesses and preserving testimony which would otherwise be lost) ; and *State v. Camara* (1965), 28 Wis. (2d) 365, 372, 373, 137 N. W. (2d) 1 (preliminary examination serves as a discovery device for defendant). These incidental fringe benefits, however, are not the real purpose of a preliminary examination, which is intended 'to protect the accused from hasty, improvident, or malicous prosecution and to discover whether there is a substantial basis for bringing the prosecution and further denying the accused his right to liberty.' *Johns v. State* (1961), 14 Wis. (2d) 119, 122, 109 N. W. (2d) 490."

The defendant cannot be heard to complain that he was denied the opportunity to utilize the preliminary hearing as a discovery device, since that is not its principal purpose and there are other appropriate methods to accomplish that end.[6] Furthermore, the fact that the defendant was bound over on the murder charge dispels the theory that he was denied due process or equal protection because he had ample notice from the complaint that he was being charged with that crime. The situation might well be different if the defendant were bound over for trial on some charge wholly unrelated to the one alleged in the complaint.

As pointed out in the State's brief, the defendant's claim that he is without recourse to challenge the pro-

---

[6] *See* secs. 971.23, 971.24, 971.25, Stats. *See also: United States v. Quinn* (D. C. Ga. 1973), 357 Fed. Supp. 1348, 1351.

priety of an information under this view is without merit. The defendant was entitled to bring a motion under sec. 971.31 (2), Stats.,[7] and in fact did so, but his motions were denied. There was no denial of due process or equal protection involved in the preliminary hearing.

The defendant argues the county court violated the provisions of sec. 971.12, Stats., and due process of law by denying his motion to sever counts 2, 3 and 4 from count 1 of the information.

Sec. 971.12, Stats., provides in pertinent part:

"**Joinder of crimes and of defendants.** (1) JOINDER OF CRIMES. Two or more crimes may be charged in the same complaint, information or indictment in a separate count for each crime if the crimes charged . . . are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan. . . .

". . .

"(3) RELIEF FROM PREJUDICIAL JOINDER. If it appears that a defendant or the state is prejudiced by a joinder of crimes or of defendants in a complaint, information or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . ."

He does not argue that the four counts do not qualify for joinder under sec. 971.12 (1), Stats., but restricts himself to the contention that the trial court abused its discretion in failing to sever under sec. 971.12 (3).

---

[7] "971.31 **Motions before trial.** . . . (2) Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached. . . ."

The defendant acknowledges that he must show "substantial prejudice before he can invoke the relief available to him under Sec. 971.12 (3)," and cites *Drew v. United States* (D. C. Cir. 1964), 331 Fed. 2d 85, 88:

". . . The argument against joinder is that the defendant may be prejudiced for one or more of the following reasons: (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one. Thus, in any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration."

However, as further stated in *Drew,* page 90, and in each of the cases cited therein, a different result obtains when evidence of each count would be admissible in a trial of any other:

"Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value.
"If, then, under the *rules relating to other crimes,* the evidence of each of the crimes on trial would be admissible in a separate trial for the other, the possibility of 'criminal propensity' prejudice would be in no way enlarged by the fact of joinder. When, for example, the two crimes arose out of a continuing transaction or the

same set of events, the evidence would be independently admissible in separate trials. Similarly, if the facts surrounding the two or more crimes on trial show that there is a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed, the evidence of one would be admissible in the trial of the other to prove identity. In such cases the prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials."

In our most recent pronouncement on the subject, in *Holmes v. State* (1974), 63 Wis. 2d 389, 396, 397, 217 N. W. 2d 657, we adopted a similar philosophy by noting that although the public interest in economical and speedy trials might sometimes be outweighed by possible prejudice resulting to a defendant tried on joint charges, severance is unnecessary where the charges are ". . . 'so inextricably intertwined so as to make proof of one crime impossible without proof of the other. . . .'" Where the evidence of the other crimes is relevant and material it can be presented to the jury whether the crimes are tried separately or jointly and severance is not necessary.

The new Wisconsin Code of Evidence allows evidence of "other crimes" when offered for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Wisconsin Rules of Evidence (1974), 59 Wis. 2d Rp. 76, sec. 904.04 (2), Stats. According to McCormick, *Evidence* (2d ed., hornbook series), pp. 448–451, sec. 190, some of the purposes for which proof of "other crimes" is admissible are:

"(1) To complete the story of the crime on trial by proving its immediate context of happenings near in time and place. . . .

" (2) To prove the existence of a larger continuing plan . . . of which the present crime on trial is a part. This will be relevant as showing motive, and hence the doing of the criminal act, the identity of the actor, and his intention, where any of these are in dispute.

"...

" (7) To show, by immediate inference, malice, deliberation, ill will or the specific intent required for a particular crime.

" (8) To prove identity. . . ." [8]

In this case evidence of each crime is material and relevant to establish every other crime. Evidence of count 4, the attempted enticement of Paticia Crandall, was admissible as to every other count to prove the identity of the defendant and "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." [9] Evidence of count 1, the murder charge, such as the abandoned car, the red boot, the footprints, and the autopsy report, would be admissible as to every other count to prove identity and intent. Evidence of count 2, the indecent behavior charge count, would be admissible as to counts 3 and 4 to show intent, and as to count 1 to show motive and to "complete the story of the crime." Evidence of count 3, the enticement charge, would be admissible as to count 4 to show intent, and as to counts 1 and 2 to "complete the story of the crime" and show a scheme or plan.

The granting or denying of a motion for severance as to trial is directed to the sound discretion of the trial court. *Holmes v. State, supra,* page 399.

We conclude the trial court did not abuse its discretion in denying the defendant's motion to sever the counts of the information for the purpose of trial.

[8] *See also:* 1 Wharton's, Torcia, *Criminal Evidence* (13th ed.), pp. 535–594, secs. 241–250; *Whitty v. State, supra; Kwosek v. State* (1973), 60 Wis. 2d 276, 208 N. W. 2d 308.

[9] *See Whitty v. State, supra.*

The defendant claims the prosecution of the defendant on counts 2, 3 and 4 was undertaken in bad faith and such prosecution constituted prosecutorial abuse of discretion. We find no evidence of prosecutorial bad faith and summarily dismiss this contention.

The defendant asserts he is entitled to a new trial on the charge of first-degree murder by virtue of the inclusion in the information of three lesser charges relating to sex offenses because such lesser charges prejudiced the jury and denied the defendant due process of law.

If the trial court had abused its discretion in refusing to sever the sex-related counts from the murder count the defendant might well be entitled to a new trial on the murder charge. Because the evidence of the sex counts was admissible in a trial on the murder charge there was no abuse of discretion and, hence, defendant is not entitled to a new trial on the murder charge.

The defendant contends that admission of the portion of the bloodstained mattress was improper because such evidence was prejudicial, irrelevant and immaterial as there was no proof the girl was ever on the mattress or that she had any extensive bleeding. When the state first attempted to introduce the bloodstained portion of the mattress at trial, defense counsel objected but his objection was based on the ground that only a portion of the mattress was being admitted rather than the whole thing. This is revealed in the following exchange which took place in chambers following defendant's objection:

"[*Defense Counsel*]: . . . our objection runs that anything about just a portion of that evidence, after a conscious weeding out, is improper in that we do not have an evaluation of all of the evidence. . . .

". . .

"*The Court*: Where is the rest of the evidence of the mattress? That is what you are referring to?

"[*Defense Counsel*]: Yes, your Honor.

"...

"It is like giving us parts of a conversation, Judge, and a proper objection. We are analogizing, we have the right to insist that the entire conversation come in. . . ."

The court denied the motion to bar the admission of the portion of the mattress but granted defendant's motion to introduce into evidence the remainder of the mattress. However, later in the trial the defendant withdrew his request to put in the remainder of the mattress. It is apparent that defendant withdrew his objection to the admission of just a portion of the mattress. The defendant waived his right to challenge the admissibility of that evidence.[10] The defendant's objection at trial was based on a ground separate and distinct from that asserted here. Therefore review is unavailable as a matter of right.[11]

Even if the proper motion had been timely made, such evidence was not irrelevant, immaterial, or so prejudicial as to be inadmissible. Defendant contends that it was irrelevant and immaterial "inasmuch as the record is devoid of any evidence, inference, or suggestion that the deceased ever bled." That contention is clearly unfounded, however, in view of Dr. Schuster's testimony at both the preliminary and the trial. Quoting from the doctor's trial testimony:

"[*Doctor*] : . . . I noticed, however, there were red blood cells present in the microscopic preparation [extracted from the victim's vagina].
"[*Prosecutor*] : What does that indicate?
"[*Doctor*] : That indicates that there had been some bleeding as evidence of injury in this part of the body. . . ."

---

[10] *Weinhagen v. Hayes* (1921), 174 Wis. 233, 249, 178 N. W. 780, 183 N. W. 162, 187 N. W. 756; *Swedish American Nat. Bank v. Koebernick* (1908), 136 Wis. 473, 479, 117 N. W. 1020.

[11] *State v. Wind* (1973), 60 Wis. 2d 267, 273, 208 N. W. 2d 357.

The defendant further states "it was a sheer impossibility that the blood on the mattress was the victim's vaginal blood since she was found fully and properly clothed and there was no blood visible to the naked eye in her under clothing." The defendant is engaging in the strained assumption that the victim remained fully clothed throughout her ordeal. Further, the Crime Lab report revealed human blood Type AB on the crotch of the girl's panties.

Sec. 904.01 of the Wisconsin Rules of Evidence, 59 Wis. 2d Rp. 66, provides:

**"Definition of relevant evidence.** 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In *State v. Becker* (1971), 51 Wis. 2d 659, 667, 188 N. W. 2d 449, this court stated:

" '. . . materiality in its more precise meaning looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to prove a proposition which is not a matter in issue nor probative of a matter in issue, the evidence is properly said to be immaterial. . . .' "

In light of these definitions it is clear that the evidence in question was both relevant and material. It tended to make more probable the State's claim that the victim had been with the defendant and had been molested by him—hence its relevancy. These facts were definitely in issue—hence its materiality. Still, however, ". . . evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Sec. 904.03, Wisconsin Rules of Evidence, 59 Wis. 2d Rp. 73. *See also: Whitty v. State, supra,* page 291. Needless to say, nearly all of the evidence presented by a prosecutor in a criminal trial will be prejudicial to the

defendant to the extent that it will tend to convince the jury of his guilt. The rule requires a balancing test, however, and in view of the fact the evidence here bears directly on the crime charged, and in view of the fact that the blood was of a rare type matching the victim's, we conclude that the probative value of the evidence outweighed its prejudicial effect. McCormick, *Evidence* (2d ed., hornbook series), p. 439, sec. 185. The trial court did not abuse its discretion in admitting the bloodstained mattress into evidence.

In the course of the trial defendant submitted a set of instructions gleaned from sources other than the Wisconsin Jury Instructions. On appeal defendant does not maintain that the instructions given in this case were erroneous, incomplete or otherwise inadequate. His sole contention is that the trial court failed to exercise its discretion by failing to consider the instructions submitted by the defendant and that because of such failure he is entitled to a new trial. *Paschong v. Hollenbeck* (1961), 13 Wis. 2d 415, 422, 108 N. W. 2d 668. We believe the trial court did give substantial consideration to defendant's proffered instructions, and the contention that the judge refused to exercise his discretion by summarily refusing them is easily dispelled by a perusal of the record. The discussion between court and counsel regarding the instructions to be used covers over 65 pages of transcript. During the course of this discussion the court allowed opposing counsel to argue in detail the relative merits of the various proposed instructions. As pointed out by the State, the trial court incorporated several of defendant's requests into its final instructions. In view of these facts we conclude that the trial court did not refuse to exercise its discretion with respect to the proposed jury instructions.

The defendant contends the evidence was not sufficient to convict him of first-degree murder, enticing a child

for immoral purposes, and attempting to entice a child for immoral purposes.

The jury found the defendant not guilty on the indecent liberties charge, and guilty on the murder, enticement and attempted enticement charges. With respect to the sufficiency of the evidence to convict, this court has stated:

". . . The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. . . ." *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725. *See also: Bowden v. State* (1973), 57 Wis. 2d 494, 495, 204 N. W. 2d 464; *Garrella v. State* (1973), 61 Wis. 2d 351, 353, 212 N. W. 2d 101.

The defendant did not testify but chose to rely on his presumption of innocence and the insufficiency of the State's evidence, virtually all of which was circumstantial. In order for this court to reverse on this ground, it must be shown that:

". . . the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " *Lock v. State*

(1966), 31 Wis. 2d 110, 115, 142 N. W. 2d 183. *See also:* *Quinn v. State* (1971), 50 Wis. 2d 96, 183 N. W. 2d 61; *Hansen v. State* (1968), 40 Wis. 2d 195, 161 N. W. 2d 289.

There is sufficient credible evidence to support the conviction on the murder charge. The defendant's car was stuck in the mud a mile from where the body was located. He had been seen driving the car in that area the night before. One of the victim's boots was lying near the car. A screwdriver, which plaintiff required to open his trunk, was found lying nearby. Footprints led from the car to within a quarter mile of the dump where the body was found and the evidence included a plaster cast of one of the prints as well as the boots defendant was wearing when arrested. The defendant had attempted to pick up another little girl within minutes of the time and less than five blocks from the spot where the victim was last seen. Although the defendant questions the identification of the defendant made by Paticia Crandall, such objection goes to credibility and weight of the evidence. The defendant relies, too, on the fact that the State Crime Lab personnel could find no evidence that the victim had ever been in the defendant's car or in his presence. However, viewing the evidence that was available "in the light most favorable to the finding," *Bautista, supra,* it cannot be said that ". . . no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt,'" that the defendant caused the death of Rose Marie Ahnen with intent to kill as proscribed by sec. 940.01, Stats.

Although the writer of this opinion has some reservations, the majority of the court concludes the credible evidence and the reasonable inferences that can be drawn from that evidence are sufficient to sustain the convictions as to count 3, enticing a minor child, Rose Marie

Ahnen, for sexual immoral purposes, and as to count 4 —attempting to entice Paticia Crandall with intent to commit the same crime.

In *State v. Johnson* (1960), 11 Wis. 2d 130, 136, 104 N. W. 2d 379, we said:

". . . Based upon long experience with the actions and motives of human nature, certain inferences of conduct may be drawn from various circumstances to a moral certainty. . . ."

The direct evidence here is probably insufficient to sustain the convictions. However, the direct evidence, coupled with the circumstantial evidence of the conduct and actions of the defendant, does give rise to permissible and reasonable inferences to support the ultimate finding that he was guilty of murder, enticing and attempting to entice.

The defendant did stop his vehicle and call Paticia Crandall, a small girl on her way to school, and within minutes in the same area another small girl on her way to school disappeared only to be found murdered two days later.

The medical examination of the deceased girl did not reveal conclusive evidence of sexual penetration. Dr. Schuster testified that the existence of red blood cells in the victim's vaginal secretion indicated to him that "there had been some bleeding as evidence of injury in this part of the body." He also stated that there was "a small area of reddening or hemorrhage in the substance of the right labia, the structure forming the outer entrance to the vaginal tract." As to the cause of this injury, the doctor stated, "I would have no way of determining the origin of it. Probably the insertion of some object. . . ." The doctor conceded, however, that the hemorrhages were only "pinpoint" in size and could have been caused by some external force, such as falling on a bicycle. The blood in the vaginal secretion was visible

only microscopically and such bleeding could even have been caused by the cotton swabs used to extract the secretion.

The portion of the mattress taken from the Tappa premises contained both spermatozoa and Type AB blood. The victim had Type AB blood as does only three percent of the general population. There was no evidence of where the mattress had been prior to when it was found in the chicken coop or who had used it previously. However, the defendant was within ready access to the chicken coop within an hour and one-half of the disappearance of the girl. The body was found completely clothed, with the exception of the missing shoe and boot. However, blood was found on the girl's undergarments.

With respect to the effect of the jury's acquittal on the indecent liberties charge, it is noted that in *State v. Mills* (1974), 62 Wis. 2d 186, 191, 192, 214 N. W. 2d 456, this court proclaimed:

"It has been universally held that logical consistency in the verdict as between the several counts in a criminal information is not required. The verdict will be upheld despite the fact that the counts of which the defendant was convicted cannot be logically reconciled with the counts of which the defendant was acquitted.

". . .

". . . it is conceded that juries have historically exercised a sense of lenity in criminal matters:

"'. . .'

and have granted numerous defendants clemency for crimes which they have committed and which the evidence is sufficient to sustain. Such is especially true today in light of prosecutorial practice to charge the defendant with all possible crimes arising from a specific transaction in hopes that the jury will convict on some, if not all."

All of the evidence in the record was relevant and material to all charges in the information. The jury could find beyond reasonable doubt, based upon permissible and

reasonable inferences arising from all of the evidence, that the defendant did entice Rose Marie Ahnen into his vehicle with the intent to commit a crime against sexual morality.

From all of the evidence it can be reasonably inferred that the defendant attempted to entice Paticia Crandall into his car with intent to commit the same immoral sexual acts. The reason he was not successful was the intervention of the act of Paticia—she ran away.

Counsel for the defendant surmises that when the defendant called Paticia it could have been for the purpose of finding his direction. The fact is he made no inquiry about directions—he only said, "Come here, little girl" and then left when she ran away.

The evidence in the opinion of the court is sufficient to sustain the three convictions and the trial reveals no prejudicial errors.

*By the Court.*—Judgment and order affirmed.