**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 21, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP467-CR**
**2019AP468-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2016CF5467**
**2016CF1685**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BOBBY L. MCNEIL,

DEFENDANT-APPELLANT.

APPEALS from judgments and an order of the circuit court for Milwaukee County:  CAROLINA STARK and FREDERICK C. ROSA, Judges. *Judgments affirmed; order affirmed in part, reversed in part, and cause remanded with directions.*

Before Brash, P.J., Dugan and Donald, JJ.

¶1      BRASH, P.J.   Bobby L. McNeil appeals his judgments of conviction in two cases:  the first case, where he was convicted of obstructing an officer; and

the second case, where he was convicted of several counts of possession of controlled substances, obstructing an officer, and felony bail jumping. He also appeals an order denying his postconviction motion without a hearing.

¶2    McNeil argues that he is entitled to resentencing or sentence modification as a result of inaccurate information presented at his sentencing hearing relating to the presence of fentanyl in the cocaine he was charged with possessing. The trial court discussed this as an aggravating factor, even though the evidence presented at trial was that the fentanyl present in the sample tested was not sufficient for conclusive identification.

¶3    McNeil further argues that the trial court erroneously exercised its discretion in granting the State's request for joinder of the two cases, and for admitting other-acts evidence relating to McNeil's previous incidents of drug dealing. Additionally, McNeil argues that he received ineffective assistance of counsel based on his trial counsel's failure to object to allegedly erroneously admitted character evidence. Furthermore, McNeil raises the issue of sufficiency of the evidence for his conviction on the drug possession charges in the second case.

¶4    We conclude that McNeil is entitled to resentencing due to the reliance of the trial court on inaccurate information regarding the presence of fentanyl in the cocaine McNeil possessed. We therefore reverse the order of the postconviction court and remand this matter for resentencing. As for McNeil's other claims, we affirm.

**BACKGROUND**

¶5    The first case against McNeil stems from an incident in April 2016. A police officer for the City of Milwaukee observed a suspect, later identified as

McNeil, enter and then exit a vehicle parked on West Meinecke Avenue that the officer knew had been reported stolen.  The officer ordered McNeil to come over to him; however, McNeil instead fled into a residence and attempted to conceal himself in a bathroom.  After a struggle in which the officer had to deploy his Taser several times, McNeil was taken into custody.  A bag that contained both heroin and cocaine was found in the bathroom.

¶6      McNeil was initially charged with possession of cocaine and heroin as a second and subsequent offense, with a habitual criminality repeater enhancer.  The charges were subsequently amended to include possession of marijuana as a second and subsequent offense, and obstructing an officer.

¶7      The second case relates to an incident in December 2016.  Officers had responded to a call regarding entry into a vacant property and observed a subject, later identified as McNeil, exit that property.  Upon seeing the officers, McNeil fled.  A short pursuit ensued, during which a citizen who observed McNeil fleeing from the police pushed McNeil, who fell to the ground.  The officers subsequently apprehended McNeil, and found a bag containing heroin, crack cocaine, and marijuana next to McNeil.  McNeil was charged with possession of both heroin and cocaine, obstructing an officer, and felony bail jumping, since he was out on bail for the first case when this incident occurred.  McNeil was "extremely uncooperative" during his arrest and booking process, refusing to give his name and telling officers that "they 'needed to warn' the citizen that assisted in the apprehension of [McNeil] because he was going to 'find him and kill him, and kill his kids if they can talk.'"

¶8      The State filed a motion for joinder of the two cases.  McNeil objected, arguing that the cases were not sufficiently similar and that joinder would

3

cause substantial unfair prejudice. After a hearing on the motion in March 2017, the trial court[1] granted the State's motion. The court found that because the bail jumping charge in the second case was based on McNeil's arrest in the first case, a jury would likely hear admissible evidence from both cases. Therefore, the court held that joinder would not cause substantially unfair prejudice to McNeil.

¶9 Prior to trial, McNeil filed motions *in limine* that requested that the State be precluded from introducing other-acts evidence. Specifically, McNeil objected to the proffered testimony of the individual who owned the vehicle in the first case—Dana Marifke—which had been reported stolen. That testimony would identify McNeil as Marifke's drug dealer, that she had loaned him the vehicle in exchange for heroin, and that her father had reported it stolen when McNeil did not return it. The trial court held that the evidence was relevant to the charges against McNeil, and further, that the evidence had a permissible purpose and was not being introduced solely as propensity evidence. Therefore, the court denied that motion *in limine*.

¶10 The trial was held in April 2017. In addition to the evidence discussed above, the State also presented testimony from officers who were involved in each of McNeil's arrests to describe the details of those incidents. This included testimony from one of the arresting officers in the second case, relating to the citizen who had pushed McNeil to the ground when he fled. The officer explained that the citizen also helped to hold McNeil down so that she could handcuff him. The officer testified that McNeil subsequently made a threat against that citizen, saying that he "would kill him and his kids[.]" However, the officer stated that she did not get the

---

[1] The Honorable Carolina Stark presided over McNeil's trial and imposed sentence; we refer to her as the trial court.

name of the citizen or get a statement from him regarding the incident, which she admitted was contrary to standard operating procedure.

¶11 Additionally, the State called an analyst from the Wisconsin State Crime Lab who had analyzed the drugs McNeil had in his possession when he was arrested in the second case. The analyst explained that in one of the samples the lab found an indication that fentanyl was present; however, the amount of fentanyl was too small to meet the lab's standard for making a conclusive identification.

¶12 At the conclusion of the trial, the jury acquitted McNeil of the drug charges in the first case, but convicted him of obstructing an officer. The jury convicted McNeil of all the charges against him in the second case.

¶13 McNeil's sentencing hearing was held in May 2017. In presenting its sentencing recommendation for the second case—which included the drug possession convictions—the State discussed the fact that there was fentanyl "attached" to the mix of cocaine and heroin. The State argued that it was an aggravating factor, noting that police officers are no longer doing field tests on drugs when they suspect the presence of fentanyl due to its potency. Thus, the State asserted that "when you don't know the weight and mixture of fentanyl involved, the seriousness there can't be underestimated."

¶14 The trial court echoed that sentiment in its discussion of the factors it was considering with regard to McNeil's sentence. The court stated that the lab analyst had "testified there was enough in that sample, that substance, to identify the presence of fentanyl." The court then discussed the dangers of fentanyl, declaring that the presence of fentanyl even in the small amount of cocaine and heroin found with McNeil was "an aggravating factor because of how risky and dangerous that drug can be in the presence of a mixture of heroin and cocaine."

5

¶15   The sentences imposed by the trial court for McNeil's convictions in both cases totaled three years of initial confinement followed by two years of extended supervision.  The longest sentence was for the felony bail jumping conviction in the second case, which entailed two years and three months of initial incarceration.  This sentence was to run concurrently to the sentences imposed for the convictions in the second case, but consecutive to the sentence in the first case.  The court fashioned the sentences such that they would all be served in state prison, as opposed to the House of Corrections.

¶16   McNeil filed a postconviction motion requesting sentence modification or resentencing, based on the trial court's consideration of the presence of fentanyl in the drug sample as a relevant factor at sentencing.  McNeil asserted that as a result of the crime lab's finding that the presence of fentanyl was too small to identify it conclusively, the references to fentanyl at the sentencing hearing were improper.

¶17   The State conceded that the information regarding the fentanyl as described by the trial court at the sentencing was inaccurate, and that the trial court relied on that inaccurate information in imposing sentence.  However, it argued that the error was harmless.  The postconviction court[2] agreed, finding that although the trial court had relied on the inaccurate information, the record did not indicate that "the erroneous information influenced the prison sentence [the trial court] imposed on the felony bail jumping count," the controlling sentence.  Therefore, it found the error to be harmless.

---

[2] McNeil's postconviction motion was decided by the Honorable Frederick C. Rosa, who we refer to as the postconviction court.

¶18    McNeil also claimed that his trial counsel was ineffective for failing to object to irrelevant character evidence; specifically, testimony by the arresting officer in the second case regarding the threats McNeil made against the citizen who assisted in apprehending him. The postconviction court found that even if this was a deficiency on the part of trial counsel, McNeil had failed to demonstrate that he was prejudiced by the error, and thus his claim failed.

¶19    This appeal follows.

## DISCUSSION

¶20    On appeal, McNeil raises the same issues from his postconviction motion—his request for sentence modification or resentencing, and his claim of ineffective assistance of counsel. He also challenges the trial court's grant of joinder of the cases, the court's admission of other-acts evidence, and whether the evidence was sufficient to convict him of the drug charges in the second case. These additional issues were not included in McNeil's postconviction motion pursuant to WIS. STAT. RULE 809.30(2)(h) (2017-18) [3], which requires issues to be raised first in a postconviction motion "unless the grounds for seeking relief are sufficiency of the evidence or issues previously raised."

## I.    Request for Sentencing Relief

¶21    We first discuss McNeil's request for sentencing relief. McNeil requests either sentence modification or resentencing based on the inaccurate

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

information regarding the presence of fentanyl in the drug sample, as discussed by the trial court at sentencing.

¶22     We conclude that the proper relief here is resentencing.[4]  "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. A defendant seeking resentencing based on inaccurate information at sentencing "must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing." *Id.*, ¶26 (citations and some quotations marks omitted).  In this case, the State has conceded both of these points.

¶23     Therefore, the burden "shifts to the [S]tate to prove the error was harmless." *Id.*  The State meets this burden if it demonstrates "that the error did not affect the [trial] court's selection of sentence; that there is no reasonable probability that the error contributed to the sentence; or that it is clear beyond a reasonable doubt that the same sentence would have been imposed absent the error." *State v. Travis*, 2013 WI 38, ¶86, 347 Wis. 2d 142, 832 N.W.2d 491.

¶24     The State argues that the error was harmless because the trial court relied on the inaccurate information only when imposing the sentence relating to the cocaine possession conviction in the second case.  This sentence was imposed to

---

[4] In McNeil's argument for sentence modification, he asserts that a review of the fentanyl findings of the State Crime Lab by an expert he enlisted for his postconviction motion is a new factor.  He then requests that that matter be remanded for a determination of whether this new factor justifies sentence modification.  *See State v. Harbor*, 2011 WI 28, ¶37, 333 Wis. 2d 53, 797 N.W.2d 828.  Because we are remanding this matter for resentencing, we do not reach McNeil's request for sentence modification.  *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (stating that where this court's conclusion disposes of the appeal, we need not consider an alternative argument).

8

run concurrent to the longer sentence for the felony bail jumping conviction, and thus the State asserts that it did not affect the actual length of McNeil's sentence.

¶25 However, the record indicates otherwise. At the time it imposed the sentence for the felony bail jumping conviction, the trial court declined to make McNeil eligible for any early release programs. In explaining its reasoning, the court stated that it had "given a lot of consideration to the minimum amount of incarceration necessary to establish the sentencing goals, *and for all of the aggravated factors that I've listed throughout the sentencing analysis*, early release would be contrary to the sentencing goals." (Emphasis added.)

¶26 In its sentencing analysis, the trial court clearly listed the presence of fentanyl as an aggravating factor, discussing in depth the dangers of it due to its potency. The court referenced the felony bail jumping conviction during this discussion, stating that "the possession of cocaine under all of the circumstances, the circumstances with fentanyl but all of the circumstances of December 6, 2016, and that [McNeil was] on bail for the lower pending charge, also makes that an intermediate level felony offense." The court observed the connection between all of the charges against McNeil, finding that they were all "aggravated for all of the reasons that I've already stated" and that they "were the basis of the bail jumping, the violation of your conditions of bail." The court also characterized the bail jumping charge as "aggravated."

¶27 The trial court considered other proper factors in fashioning the sentences it imposed, such as McNeil's "significant prior record" and the need to protect the community due to McNeil's "longstanding pattern of failing to follow the rules while he is out in the community." However, based on the court's consideration of the presence of fentanyl in the drugs possessed by McNeil, its

discussion of the same as an aggravating factor, and its statement regarding the connection between all of McNeil's convictions—including the felony bail jumping count—we are not persuaded that the inaccurate information relating to the presence of fentanyl did not affect the sentence for the bail jumping conviction, which was the longest, and thus controlling, sentence.

¶28     As a result, the State has not met its burden of showing that the trial court's reliance on the inaccurate fentanyl information was harmless: it has not demonstrated that the inaccurate information did not affect the sentences selected by the trial court; that there is no reasonable probability that it contributed to those sentences; or that it is clear beyond a reasonable doubt that the same sentences would have been imposed without the consideration of that inaccurate information. *See id.* Therefore, McNeil is entitled to resentencing.

## II.     Joinder of Cases

¶29     Next, we address McNeil's claim relating to the joinder of the cases. Joinder of crimes is permitted under WIS. STAT. § 971.12(1):

> Two or more crimes may be charged in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

Furthermore, the trial court "may order 2 or more complaints, informations or indictments to be tried together if the crimes … could have been joined in a single complaint, information or indictment." Sec. 971.12(4).

¶30     Challenges to joinder involve two distinct inquiries: (1) whether the initial joinder determination was proper, which is a question of law; and (2) whether

a defendant is prejudiced by the joinder, requiring severance, a determination which is within the trial court's discretion. *State v. Salinas*, 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609. In this case, the State moved for joinder of the cases, asserting that joinder was appropriate based on "the similarities in alleged offenses, location, [and] time between offenses[.]" McNeil initially challenged that joinder was not appropriate, but did not renew that argument in this appeal.

¶31 Rather, on appeal McNeil focuses on his argument on the second inquiry—that joinder would cause him undue prejudice. Severance of joined cases is appropriate "[i]f it appears that a defendant or the [S]tate is prejudiced by a joinder of crimes[.]" WIS. STAT. § 971.12(3). The trial court found, at the time it granted the State's motion, that joinder would not cause McNeil undue prejudice. We will uphold such a discretionary determination if the trial court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Hefty v. Strickhouser*, 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820 (citations omitted).

¶32 "In order to establish that the trial court erroneously exercised its discretion, the defendant must establish that he or she suffered 'substantial prejudice.'" *State v. Linton*, 2010 WI App 129, ¶15, 329 Wis. 2d 687, 791 N.W.2d 222 (citations and one set of quotation marks omitted). This court has previously explained that "[i]t is not sufficient to show that *some* prejudice was caused." *Id.*, ¶21 (citation omitted; brackets and emphasis in *Linton*). To that end,

> Any joinder of offenses is apt to involve some element of prejudice to the defendant, since a jury is likely to feel that a (defendant) charged with several crimes must be a bad individual who has done something wrong. However, if the notion of involuntary joinder is to retain any validity, a higher degree of prejudice, or certainty of prejudice, must be shown before relief will be in order.

11

*Id.* (citation and quotation marks omitted). Additionally, "[i]f the offenses meet the criteria for joinder, it is presumed that the defendant will suffer no prejudice from a joint trial," although that is a rebuttable presumption. *Id.*, ¶15 (citation omitted; brackets in *Linton*).

¶33 The trial court found that joinder would not cause McNeil substantial prejudice because evidence relating to the charges in the first case would be admissible in the second case for acceptable purposes due to the nature of the cases: the bail jumping charge in the second case was a result of McNeil violating the terms of his bail in the first case, and the drug charges in the first case were admissible for purposes of showing that McNeil had knowledge that the drugs he possessed in the second case were controlled substances. Additionally, the court noted that it could draft a jury instruction that this evidence could be considered as it relates to the elements of the crimes charged, but not as propensity evidence.

¶34 McNeil asserts that the true purpose that the State wanted to present this evidence was for propensity purposes: as "yet more 'bad behavior' involving law enforcement[.]" Other-acts evidence is not admissible for this purpose. *See* WIS. STAT. § 904.04(2)(a). However, as the trial court noted, such evidence may properly be offered for other purposes, such as knowledge or opportunity. *See id.*

¶35 Furthermore, the State points out that "a truly propensity-free chain of reasoning" is not the standard by which other-acts evidence is admitted. Rather, the determination of admissibility is based on whether the "danger of unfair prejudice" substantially outweighs the evidence's probative value. *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). Moreover, "[i]f the [S]tate must prove an element of a crime, then evidence relevant to that element is admissible, even if a

defendant does not dispute the element." ***State v. Hammer***, 2000 WI 92, ¶25, 236 Wis. 2d 686, 613 N.W.2d 629.

¶36 In this case, while the trial court did not conduct a detailed ***Sullivan*** analysis, it nevertheless applied the relevant law relating to the admission of the evidence to the facts of the case. Furthermore, it provided an instruction to the jury regarding its proper consideration of that evidence. *See **State v. Parr***, 182 Wis. 2d 349, 361, 513 N.W.2d 647 (Ct. App. 1994) ("The delivery of a limiting or curative instruction serves to eliminate or minimize the risk of undue prejudice."). Moreover, we presume the jury followed that instruction. *See **State v. Abbott Labs.***, 2012 WI 62, ¶103, 341 Wis. 2d 510, 816 N.W.2d 145. We therefore conclude that the trial court's determination that McNeil would not be unduly prejudiced upon joinder of the cases was reasonable, and not an erroneous exercise of its discretion. *See **Hefty***, 312 Wis. 2d 530, ¶28.

### III. Admission of Marifke's Testimony

¶37 McNeil's next argument is that the trial court erroneously admitted the testimony of Marifke, the owner of the allegedly stolen vehicle that police observed McNeil entering and exiting prior to his arrest in the first case. McNeil again argues that this other-acts evidence was presented for improper propensity purposes to "paint Mr. McNeil as a drug dealer[.]"

¶38 In its decision to admit Marifke's testimony, the trial court stated that this evidence was admissible as it related to the elements of the crimes charged. With regard to the obstruction charge, it established the officer's reason for stopping McNeil after seeing him in the vehicle, at which point he fled. The court also found that it was relevant to the drug charges in the second case with regard to whether McNeil had knowledge that they were controlled substances.

¶39    The trial court then discussed whether this evidence was unfairly prejudicial to McNeil, concluding that it was not.  The court noted that by its nature, most of the State's evidence against a defendant is prejudicial to that defendant.  *See Bailey v. State*, 65 Wis. 2d 331, 351-52, 222 N.W.2d 871 (1974) ("Needless to say, nearly all of the evidence presented by a prosecutor in a criminal trial will be prejudicial to the defendant to the extent that it will tend to convince the jury of his guilt.").

¶40    As the trial court stated, the test for whether to admit relevant evidence "is not whether evidence is prejudicial but whether it is *unfairly* prejudicial." *State v. Mordica*, 168 Wis. 2d 593, 605, 484 N.W.2d 352 (Ct. App. 1992). Specifically, unfair prejudice "results where the proffered evidence, if introduced, would have a tendency to … appeal[] to the jury's sympathies, arouse[] its sense of horror, provoke[] its instinct to punish or otherwise cause[] a jury to base its decision on something other than the established propositions in the case." *Id.*  In other words, unfair prejudice means "a tendency to influence the outcome by *improper* means." *Id.*

¶41    The trial court here determined that Marifke's testimony did not rise to the level of being unfairly prejudicial.  Furthermore, the court again provided a jury instruction regarding the proper consideration of this evidence.  *See Parr*, 182 Wis. 2d at 361.

¶42    Thus, the trial court based its decision on the relevant law, applied it to the facts of the case, and made a reasonable decision.  Therefore, the court did not erroneously exercise its discretion in admitting this evidence.  *See Hefty*, 312 Wis. 2d 530, ¶28.

### IV.    Ineffective Assistance of Counsel Claim

¶43   We next address McNeil's claim that his trial counsel was ineffective for failing to object to testimony of the arresting officer in the second case regarding McNeil's threats to the citizen who stopped McNeil when he fled. McNeil asserts that this was inadmissible character evidence, which his trial counsel failed to object to during the trial.

¶44   To prove ineffective assistance of counsel, a defendant must show that his trial counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant "must prevail on both parts of the test to be afforded relief." *State v. Allen*, 2004 WI 106, ¶26, 274 Wis. 2d 568, 682 N.W.2d 433. We review *de novo* "'the legal questions of whether deficient performance has been established and whether it led to prejudice rising to a level undermining the reliability of the proceeding.'" *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citation omitted). However, "[a] court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶45   A claim of ineffective representation requires that a postconviction evidentiary hearing be held "to preserve the testimony of trial counsel." *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). However, a defendant is not automatically entitled to an evidentiary hearing relating to his or her postconviction motion. *State v. Bentley*, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). Rather, the trial court is required to hold an evidentiary hearing only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *Allen*, 274 Wis. 2d 568, ¶14. This presents a question of law that we review *de novo*. *Id.*, ¶9.

15

¶46     The postconviction court rejected McNeil's ineffective assistance claim without a hearing.  In its discussion, it noted that McNeil's defense to the drug charges in the second case was that the drugs found near him after he was pushed down by the citizen actually belonged to that citizen, not to McNeil, and that the trial court had discussed the effectiveness of this defense at McNeil's sentencing hearing:

> I think it's not a reasonable hypothesis that a citizen who may have possessed controlled substances see[s] an officer chasing you, rather than just walking away, they had no reason initially to intervene or to get involved, they could have just walked away.  And the hypothesis is that instead of just walking away with their controlled substances, they thought that the better course would be to help the officer catch you, push you to the ground, drop the drugs next to your hand and then take off.  I find that to be an unreasonable hypothesis.  I think the jury did too, given the guilty verdict.

The postconviction court agreed with this assessment by the trial court and found that it indicates a lack of prejudice for McNeil's ineffective assistance claim.

¶47     Moreover, the postconviction court stated that "the notion that the jury might have convicted the defendant based on this arguably inadmissible character evidence rather than the evidence of guilt is severely undermined by the fact that the jury *acquitted him* of three of the four charges" in the first case.  We agree with this premise.  *See **Parr***, 182 Wis. 2d at 362 (stating that an acquittal on a related charge "substantially undercuts [a defendant's] argument that the other[-]acts evidence was unfairly prejudicial").  However, we also point out that this evidence was admissible for the permissible purpose of showing McNeil's consciousness of guilt and was highly probative of the drug possession charges.  *See **State v. Neuser***, 191 Wis. 2d 131, 144, 528 N.W.2d 49 (Ct. App. 1995) (where this court concluded that the defendant's implied threat to the victim was "evidence of a likely criminal act and highly probative" of his consciousness of guilt).

16

¶48    Trial counsel will not be deemed to have been deficient for failing to make a meritless objection. *See State v. Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245. Furthermore, we agree with the postconviction court that McNeil has failed to demonstrate that he was prejudiced even if there was an error. Therefore, McNeil's ineffective assistance of counsel claim fails and, as a result, he is not entitled to a *Machner* hearing. *See Allen*, 274 Wis. 2d 568, ¶¶14, 26.

### V.    Sufficiency of the Evidence

¶49    Finally, McNeil raises the argument that there was insufficient evidence to convict him of the drug possession charges in the second case. This claim involves the drugs found next to McNeil when he was apprehended after he was pushed to the ground by the citizen, as described above. McNeil asserts that there is no DNA or fingerprint evidence linking him to that baggie of drugs, and further, that the State failed to provide conclusive chain of custody evidence sufficient to establish that the drugs tested by the State Crime Lab were indeed the drugs seized at the scene in the second case.

¶50    The issue of whether there is sufficient evidence to sustain a verdict is a question of law that we review *de novo*. *See State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. In making our determination, "we consider the evidence in the light most favorable to the State and reverse the conviction only where the evidence 'is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" *Id.* (quoting *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990)). Accordingly, we will "uphold the conviction if there is any reasonable hypothesis that supports it." *Smith*, 342 Wis. 2d 710, ¶24.

¶51     With regard to McNeil's possession of the baggie, the jury heard the officer's testimony regarding its seizure and rejected McNeil's defense that it had belonged to the citizen who assisted in the arrest.  Rather, the jury made the reasonable inference that the drugs had been in McNeil's possession. *See id.*

¶52     With regard to the chain of custody, the arresting officer testified that she saw a baggie that she believed contained marijuana next to McNeil when he fell.  Subsequent to his arrest, the officer logged the baggie into inventory under McNeil's name and correlating incident number.

¶53     The analyst from the State Crime Lab then testified that the drugs he tested were from a baggie identified with McNeil's name and the same incident number, with three substances to be tested.  The analyst testified that the first sample contained both cocaine and heroin, and indicated the presence of fentanyl; the second sample was marijuana; and the third sample was heroin.

¶54     McNeil made no objection during the trial as to the admission of the drug evidence based on insufficiencies in the chain of custody.  Moreover, any potential gaps in the chain of custody of the State's evidence "go to the weight of the evidence rather than its admissibility." ***State v. McCoy***, 2007 WI App 15, ¶19, 298 Wis. 2d 523, 728 N.W.2d 54 (citation omitted).

¶55     In any event, we conclude that this evidence is sufficient to support the jury's finding that McNeil was in possession of these controlled substances at the time of his arrest in the second case.  We therefore uphold his conviction. *See id.*

¶56     Accordingly, we affirm McNeil's judgments of conviction and the postconviction court's denial of his ineffective assistance of counsel claim.

18

However, we reverse the postconviction court's denial of McNeil's request for sentencing relief, and remand this matter for resentencing.

*By the Court.*—Judgments affirmed; order affirmed in part, reversed in part, and cause remanded with directions.

Not recommended for publication in the official reports.