COURT OF APPEALS
DECISION
DATED AND FILED

May 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1370**

Cir. Ct. No. **2015CF30A**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ZACHARIE MICHAEL BAUER,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Marquette County: MARK T. SLATE, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Zacharie Michael Bauer, pro se, appeals an order that denied Bauer's WIS. STAT. § 974.06 (2021-22)[1] postconviction motion without a hearing.  Bauer argues that he alleged sufficient facts in his motion to require the circuit court to hold an evidentiary hearing on his claims of ineffective assistance of postconviction counsel for failing to raise claims of ineffective assistance of trial counsel and prosecutorial misconduct.  We conclude that the allegations set forth in Bauer's postconviction motion are insufficient to require the court to hold a hearing.  We affirm.

*Background*

¶2      On August 30, 2016, Bauer was convicted, following a jury trial, of repeated sexual assault of a child, and sentenced to thirty years of initial confinement and fifteen years of extended supervision.  We summarized the facts of this case in Bauer's direct appeal:

> Bauer was charged with repeated sexual assault of a child, as a repeater, based on accusations made by the seven-year-old daughter of Bauer's former live-in girlfriend.  During a forensic interview, the victim stated that on several occasions, Bauer made her touch, rub, and lick his "boy parts," "peed" in her mouth but told her that it was not pee and to "keep doing it" or "keep going," and put something slippery on his penis that smelled like strawberries.  The victim also stated that Bauer put his finger "in [her] butt."
>
> At trial, Bauer's defense was that the victim's mother had coached the victim to falsely accuse him.  Bauer argued that the victim's mother was angry with him and wanted to "make him pay" for the way Bauer had treated the mother.  Bauer's mother, Sara Jolla,[2] testified that the child's mother told Jolla that she was "going to get revenge" on

---

[1]  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  Our prior opinion spelled Bauer's mother's name as "Sara Jolla."  However, the trial transcript indicates that Bauer's mother's name is spelled "Sarah Jola."

> Bauer and "ruin his life." According to Jolla, after Bauer was arrested, the child's mother told Jolla, "we know what she has to say. We will make sure that she gets [it] right. I will ruin his life."

*See* **State v. Bauer**, No. 2018AP169-CR, unpublished slip. op. ¶¶2-3 (WI App Feb. 7, 2019).

¶3      After sentencing, Bauer, by counsel, filed a postconviction motion, arguing that his trial counsel was ineffective by failing to "seek any expert opinion on the suggestiveness of [the child victim's] interview and on what influences could have caused [the child victim] to make a false allegation against Zacharie Bauer." The postconviction motion argued that expert testimony by a forensic psychologist as to "negative stereotype induction" and "source misattribution errors," as well as the suggestiveness of the interview techniques and interviewer bias, could have supported the defense theory that the allegations were false. In support, Bauer attached a report by Dr. David Thompson as to "how psychological research has shown that external influences, improper interviewing techniques, interviewer bias and source misappropriation errors can give rise to false memories in children." Bauer argued that, with that expert testimony, there was a reasonable probability that the jury would not have convicted him. He argued in the alternative that Dr. Thompson's report was newly discovered evidence that entitled Bauer to a new trial.

¶4      The circuit court denied Bauer's postconviction motion without a hearing, and we affirmed on appeal. *See id.*, ¶¶1, 6. We concluded that the court properly denied Bauer's postconviction motion without a hearing because Bauer failed to allege facts that would entitle him to relief. *Id.*, ¶15. Specifically, we concluded that "Dr. Thompson's report does not contain opinions that would be admissible testimony at trial," and that Bauer therefore had "not met his burden of

alleging facts to show that he was prejudiced by his attorney's failure to pursue expert testimony regarding potential sources of false allegations from the victim." *Id.* For the same reason, we concluded that Dr. Thompson's report was not newly discovered evidence that entitled Bauer to a new trial. *Id.*, ¶26.

¶5 Bauer then pursued a petition for a writ of habeas corpus in this court, arguing ineffective assistance of counsel and errors during the trial proceedings. We explained that any claims of ineffective assistance of counsel or other errors during trial that had not been preserved for appeal had to be raised in the circuit court. We identified one claim by Bauer that was properly raised in his habeas petition: "that Bauer's appellate counsel was ineffective in the way that she argued a claim that his trial counsel was ineffective by not presenting expert testimony about the forensic interview of the victim." In his petition, Bauer argued that "his counsel should have cited additional case law, and he also focuse[d] on trial counsel's lack of investigation of whether an expert should have been called." We rejected that argument, explaining that Bauer did not address the reasons that the proposed expert testimony would not have been admissible as evidence at a new trial. We concluded that Bauer's petition failed to sufficiently allege any reason to believe that a different outcome would have occurred if Bauer's appellate attorney had argued the issue in the manner he proposed.

¶6 In May 2022, Bauer filed the pro se WIS. STAT. § 974.06 motion underlying this appeal. Bauer argued that his postconviction counsel was ineffective by failing to argue in his direct postconviction motion that cumulative errors by his trial counsel rendered counsel ineffective. He argued that his postconviction counsel performed deficiently by arguing only a single claim of trial counsel error, and that he was prejudiced by the defective performance because, had counsel argued cumulative error, there was a reasonable probability that the circuit

4

court would have granted the postconviction motion. He also argued that his postconviction counsel should have argued the cumulative effect of acts of prosecutorial misconduct. He argued that the cumulative errors arguments were "clearly stronger" than the single claim of error his postconviction counsel raised on appeal. *See* ***State v. Romero-Georgana***, 2014 WI 83, ¶58, 360 Wis. 2d 522, 849 N.W.2d 668.

¶7      The circuit court sought clarification as to the claims that Bauer was seeking to raise. In response, Bauer clarified that his claims of ineffective assistance of trial counsel were that counsel failed to: (1) consult any expert, not just Dr. Thompson; (2) investigate any source of impeachment evidence that Bauer provided, including through witnesses Elizabeth Readence and Martin Lee; (3) introduce diary entries by Bauer's mother, Sarah Jola, "as both memory refresher and authentication evidence" as to her testimony; (4) call as witnesses Readence, social worker Casey Baker, or the Sexual Assault Nurse Examiner ("nurse examiner"); (5) object to the prosecution's offer of the lubricant bottle that was obtained by police, which he claimed was "mishandled, contaminated, obtained from a hostile individual, from a residence [Bauer] ha[d] never been to, and [there was] no proof of when the bottle presented was even purchased"; and (6) "develop attorney work product in the defense file, which was only discovered when Counsel refused to surrender said file." Bauer clarified that his claims of prosecutorial misconduct were that the prosecutor: (1) failed to correct false statements by witnesses called by the prosecution; (2) offered the prosecutor's opinion based on the nurse examiner's notes; and (3) offered the lubricant bottle into evidence "despite clear contamination, compromised integrity, and a complete lack of authentication."

¶8      The circuit court denied the motion without a hearing. Bauer appeals.

*Discussion*

¶9      When, as here, the circuit court denies the defendant's WIS. STAT. § 974.06 motion without an evidentiary hearing, the issue on appeal is narrow: whether the allegations in the postconviction motion are sufficient to require the circuit court to hold an evidentiary hearing. *See State v. Balliette*, 2011 WI 79, ¶38, 336 Wis. 2d 358, 805 N.W.2d 334. To entitle the defendant to an evidentiary hearing, the postconviction motion must allege "sufficient material facts—e.g., who, what, where, when, why, and how—that, if true, would entitle [the defendant] to the relief [the defendant] seeks." *State v. Allen*, 2004 WI 106, ¶¶2, 23, 274 Wis. 2d 568, 682 N.W.2d 433. Additionally, absent a sufficient reason, a defendant is procedurally barred from raising claims in a § 974.06 postconviction motion that could have been raised in a prior postconviction motion or appeal. *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181-82, 185-86, 517 N.W.2d 157 (1994). "In some instances, ineffective assistance of postconviction counsel may be a sufficient reason for failing to raise an available claim in an earlier motion or on direct appeal." *Romero-Georgana*, 360 Wis. 2d 522, ¶36.

¶10      Whether a WIS. STAT. § 974.06 motion alleges sufficient facts to require a hearing and a sufficient reason for failing to raise claims earlier are questions of law that this court independently reviews. *Id.*, ¶30. We limit our review to the allegations within the four corners of the motion.[3] *Id.*, ¶64.

¶11      A claim for ineffective assistance of counsel requires the defendant to show both that defendant's trial counsel's performance was deficient and that

---

[3] We consider Bauer's motion, the attachments to the motion, and Bauer's letter response to the circuit court's request for clarification. We do not consider additional assertions in Bauer's briefs that were not raised in the circuit court.

counsel's deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both parts if the "defendant makes an insufficient showing on one." *Id.* at 697. Trial counsel's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Prejudice requires the defendant to show "that but for [trial counsel's] error, there is a reasonable probability the jury would have had a reasonable doubt as to guilt." *State v. Sholar*, 2018 WI 53, ¶45, 381 Wis. 2d 560, 912 N.W.2d 89. A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶12 Bauer argues in his WIS. STAT. § 974.06 motion that his postconviction counsel should have argued the cumulative effect of trial counsel's errors and prosecutorial misconduct, rather than the single claim of trial counsel error that was raised in the postconviction motion. He sets forth the individual claims of ineffective assistance of counsel and prosecutorial misconduct that he believes his postconviction counsel should have raised. We address each claim in turn.

¶13 First, Bauer argues that trial counsel was ineffective by failing to consult an expert on "Negative Stereotype Induction," "Munchausen Syndrome by Proxy," and "Memory Manipulation." He argues that those three issues can be shown to "compound each other," and that signs and symptoms of all three are present in this case. He argues that expert testimony on those issues would have created reasonable doubt as to the victim's accusations.

¶14 We conclude that Bauer's postconviction motion fails to set forth sufficient facts to support this claim of ineffective assistance of counsel. The motion asserts, in conclusory fashion, that Bauer's trial counsel failed to conduct a

reasonable investigation and consult an expert in "Negative Stereotype Induction," "Munchausen Syndrome by Proxy," and "Memory Manipulation." However, Bauer fails to identify any expert who could have provided admissible testimony, or explain what admissible testimony an expert could have provided, based on the facts of Bauer's case.[4] Moreover, while Bauer asserts that the signs and symptoms of all three syndromes are present here, he does not explain what those facts are. Rather, Bauer asserts only that the expert testimony, together with other evidence he believes that trial counsel should have presented to discredit J.H.'s testimony (which we discuss later in this opinion in the context of Bauer's other claims of ineffective assistance of counsel), would have created reasonable doubt as to Bauer's guilt. Because the postconviction motion does not allege any facts to show that trial counsel could have discovered admissible expert testimony through an investigation, the motion is insufficient to show that Bauer was prejudiced by counsel's failure to investigate a potential expert witness.

¶15    Second, Bauer argues that trial counsel erred by failing to obtain impeachment evidence against J.H. Bauer points to a supporting affidavit by Lee,

---

[4] Bauer cites the following material attached to his motion: (1) a report by Dr. Thompson on Negative Stereotype Induction; and (2) an article on Munchausen Syndrome by Proxy. Bauer also cites an online video of "Kyle Hill, a scientist who breaks down the explanation of how memories can be implanted into the human psyche." As to Dr. Thompson's report, we already decided in Bauer's direct appeal that Dr. Thompson's testimony would not have been admissible at trial. Bauer may not relitigate that issue here. *See* *State v. Witkowski*, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991) ("A matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue."). Moreover, the law of the case doctrine precludes us from re-examining the admissibility of Dr. Thompson's testimony. *See* *State v. Stuart*, 2003 WI 73, ¶23, 262 Wis. 2d 620, 664 N.W.2d 82 (explaining that "[t]he law of the case doctrine is a 'longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the [circuit] court or on later appeal'" (quoted source omitted)). As to the article on Munchausen Syndrome by Proxy and the online video on implanted memories, Bauer does not explain how that material would have supported the admission of expert testimony at his trial.

averring that: Lee had grown up with J.H.; Lee had personal knowledge that, when J.H. was sixteen, she accused a friend of sexually assaulting her, and that an investigation led to the discovery of her diary entries indicating that she had made sexual advances toward the friend, which he had refused, and she was upset and planned revenge against him; Lee had knowledge that, when they were growing up, J.H. made accusations of sexual assault against her step-father; J.H. had "been known to make false or fabricated accusations of sexual assault against individuals, especially when she feels slighted or offended"; and J.H. told Lee that she had "worked with" the child victim on "what [Bauer] did."[5]

¶16    Bauer also points to a supporting affidavit by Readence, averring that she made an audio recording of a visit with J.H. in June of 2015 and that during the recorded visit, J.H. recounted statements by the child victim that were inconsistent with the victim's previous statements. In the affidavit Readence also avers that: the child victim also relayed more inconsistencies to Readence; J.H.'s brother then visited Readence and retold the accusations by the child victim with further inconsistencies, which Readence recorded as well; Readence provided both recordings to Bauer's counsel; J.H. attempted to obtain a restraining order against Readence, falsely alleging that Readence had tried to obtain information from the child victim during the visit at J.H.'s home; and Readence informed Bauer's counsel about the content of the restraining order hearing. In addition, Bauer directs us to a letter written by J.H. explaining that she changed her name to avoid harassment by Bauer and his family. Bauer argues that the impeachment evidence trial counsel

---

[5] The affidavit also contains averments regarding J.H.'s personal and sexual history that are plainly irrelevant to this case and we refer to these no further.

9

should have obtained would have bolstered the defense that the allegations against Bauer were fabricated.

¶17   As we next explain, we conclude that Bauer's postconviction motion does not set forth sufficient facts to establish that his trial counsel was ineffective because the motion fails to explain how any of the proposed impeachment evidence would have created a reasonable probability that Bauer would not have been convicted at trial.

¶18   Bauer's trial counsel attacked J.H.'s credibility at trial, eliciting the following testimony from J.H. as to her motive to coach the victim to fabricate the allegations against Bauer:  during the course of J.H.'s relationship with Bauer, Bauer engaged in multiple infidelities; their relationship ended when J.H. caught Bauer in a sexual relationship with their babysitter, Readence; Bauer took their sons without permission for several days, which J.H. reported to police as a kidnapping; Bauer had gotten a restraining order against J.H.; Bauer repeatedly reported J.H. to social services with claims that she was neglecting her children; Bauer had stolen money and a vehicle from J.H.; and J.H. was angry with Bauer for those actions. Additionally, Jola testified that J.H. was extremely angry at Bauer after they broke up, and that J.H. told Jola that she was going to "ruin his life" and that Bauer would "pay for this," that the child victim "was accusing [Bauer] of molesting her," that J.H. knew "what she has to say" and would "make sure that she gets [it] right.  I will ruin his life."

¶19   As set forth above, Bauer's trial counsel introduced extensive evidence that J.H. had multiple motives to coach the victim to fabricate the allegations against Bauer, and that she had made statements that could be interpreted as stating her intent to do so.  Bauer does not explain how attempting to further

10

impeach J.H. with Lee's testimony would have created a reasonable probability of a different outcome. Moreover, the jury heard the recording of the child victim disclosing the abuse by Bauer during a forensic interview in a different matter, and J.H. testified that that was the first time she learned of the abuse. The postconviction motion does not explain why further impeachment evidence that he now purports to identify would have mattered at trial in light of this and other trial evidence. The motion is therefore insufficient to show that there was any likelihood of a different outcome with Lee's testimony.

¶20 The postconviction motion also does not show that counsel was ineffective by failing to use Readence's testimony to further impeach J.H. Readence averred that the child victim had made inconsistent statements about the alleged sexual assaults and that J.H. lied under oath during separate court proceedings. However, nothing in the postconviction motion or Readence's affidavit explains what the child victim's inconsistent statements were, what specific false statements J.H. made under oath, or why those facts would have been relevant to Bauer's trial. The postconviction motion therefore does not show any likelihood of a different outcome at trial had counsel used that evidence to impeach J.H.

¶21 The final specific impeachment evidence that Bauer argues that trial counsel should have used is evidence that J.H. had changed her name prior to trial, and that she therefore provided an incorrect name when she testified. However, Bauer does not explain how any evidence about J.H.'s name change would have changed the outcome of his trial. Therefore, the motion is insufficient to show any prejudice to Bauer based on trial counsel's alleged error.

¶22 We conclude that there is no reasonable probability that the further impeachment evidence that Bauer argues that trial counsel should have used would

have resulted in a different outcome at trial. Therefore, as to these alleged errors, the motion fails to sufficiently allege any prejudice from trial counsel's claimed deficient performance, and the circuit court properly denied the postconviction motion without a hearing on that claim.

¶23 Bauer's third claim of ineffective assistance of trial counsel is that he informed trial counsel that Jola had a personal diary entry that would have corroborated her trial testimony that J.H. told her that J.H. "knew what [the victim] had to say" and that J.H. "would make sure she got it right." Bauer argues that the diary entry would have helped refresh Jola's memory and would have bolstered her credibility. He argues that he was prejudiced by trial counsel's failure to use the diary entry to support Jola's testimony in the eyes of the jury.

¶24 Those assertions are insufficient to establish ineffective assistance of trial counsel. Nothing in the postconviction motion establishes that the diary entry was necessary to refresh Jola's testimony; she was able to testify to those facts at trial. Additionally, the postconviction motion does not explain why there would have been any reasonable likelihood of a different outcome at trial had Bauer's trial counsel introduced Jola's diary entries with the same information that Jola testified to. Accordingly, the assertions in the postconviction motion are insufficient to establish prejudice as to this claim of ineffective assistance of counsel.

¶25 Fourth, Bauer argues that trial counsel failed to investigate potential testimony by: (1) Readence, whose affidavit is summarized above; (2) the social worker, Baker, who Bauer claims was aware of and investigated inconsistent statements by the child victim and recorded "blatantly false information" provided to her by J.H.; and (3) the nurse examiner, because the results of her exam indicated a lack of evidence of the alleged sexual assaults.

12

¶26     Again, the postconviction motion fails to set forth sufficient facts to establish that Bauer was prejudiced by trial counsel's failure to present testimony by Readence, Baker, or the nurse examiner.  There are no facts set forth in the postconviction motion as to what those witnesses would have testified to that would have made any difference at trial.  As to Readence, we have already explained why the postconviction motion and Readence's affidavit are insufficient to establish any testimony by Readence that was likely to create a reasonable probability of a different outcome.  The postconviction motion provides no allegations of fact as to the claimed inconsistent and false information known by Baker.  And, the postconviction motion does not explain why the results of the nurse examiner's exam were relevant to this case, based on the victim's allegations.  Accordingly, the postconviction motion fails to show any prejudice to Bauer from trial counsel's failure to present those witnesses.

¶27     Fifth, Bauer argues that trial counsel should have objected to the prosecution introducing into evidence the lubricant bottle that police retrieved from J.H.  Bauer asserts that the bottle was obtained by law enforcement "from a residence Bauer had never been to, on an unauthenticated time and place, had no forensic evidence to even support that Bauer had even handled the bottle."  He also asserts that the bottle was "improperly handled during the gathering phase by an untrained civilian, who had clear motive to act in bad faith against Bauer."  He further contends that the bottle "was not retrieved until several weeks after the existence of a bottle was made common knowledge, providing more than sufficient time for the evidence to be fabricated, falsified, and altered."

¶28     Nothing in the postconviction motion establishes that trial counsel was ineffective for failing to object to the prosecution's offer of the bottle of lubricant into evidence.  The postconviction motion fails to explain the context in

which the bottle of lubricant was introduced or the facts that would have supported an objection. Moreover, as we now explain, the trial transcript refutes Bauer's assertion that trial counsel should have objected to the introduction of the bottle of lubricant.

¶29    An investigating officer testified at trial that he asked J.H. about the strawberry-flavored lubricant that the child victim had referenced in her forensic interview. J.H. told the officer she had the lubricant at her new residence. The officer arranged with J.H. to obtain the bottle of lubricant from her at her residence. When the officer went to J.H.'s residence, J.H. was home but was unable to come outside, so she had her ex-husband take the lubricant bottle out to the officer. The officer took possession of the lubricant bottle and placed it in an evidence bag. He identified the bottle of lubricant at trial as the bottle he obtained from J.H.

¶30    J.H. also identified the lubricant bottle as the bottle she provided to the officer. J.H. explained that the bottle belonged to her and Bauer, and that they kept it in a drawer in a table next to their bed when they lived together with the child victim. Bauer's trial counsel cross-examined both the officer and J.H. regarding the lubricant bottle, eliciting that J.H. already knew that the victim had alleged use of a strawberry-flavored lubricant when the officer contacted her to retrieve the bottle, and that it was kept in an unlocked drawer.

¶31    The circuit court properly denied this claim of ineffective assistance of counsel without a hearing because the prosecution offered evidence that connected the bottle of lubricant to the victim's claims and showed how and why the officer obtained the lubricant bottle, and the officer and J.H. both identified the lubricant bottle in evidence as the bottle J.H. provided to the officer. *See* ***State v. McCoy***, 2007 WI App 15, ¶9, 298 Wis. 2d 523, 728 N.W.2d 54 ("'The requirements

of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' A perfect chain of custody is not required." (quoted source omitted)).

¶32    Sixth, Bauer argues that trial counsel failed to develop a file on his case. Bauer argues that trial counsel's failure to create a defense file was deficient and also shows that counsel failed to adequately investigate for trial.[6] Again, however, Bauer has not alleged any facts to show that the outcome of his trial would have been different absent trial counsel's failure to maintain a trial file.

¶33    In sum, Bauer has asserted purported errors by trial counsel without offering adequate explanation as to why those asserted errors mattered. *See Allen*, 274 Wis. 2d 568, ¶23 (sufficient postconviction motions will have alleged "the five 'w's' and one 'h'; that is, who, what, where, when, why, and how"). Bauer was required to make a showing of actual prejudice as to each of his claims of trial counsel's errors. It is not enough for a defendant to merely show that the error "had some conceivable effect on the outcome" of the trial. *Strickland*, 466 U.S. at 693. Rather, the defendant must demonstrate that but for defendant's trial attorney's error there is a reasonable probability—a "probability sufficient to undermine confidence in the outcome"—that the result of the trial would have been different. *Id.* at 694. Bauer was required to make a showing that "absent the errors, the factfinder would

---

[6] Bauer also claims that trial counsel failed to respond to his request for his file. It is true that, upon termination of representation, counsel must "take steps to the extent reasonably practicable to protect a client's interests, such as … surrendering papers and property to which the client is entitled." *See* SCR 20:1.16(d); *see also **OLR v. Cooper***, 2007 WI 37, ¶14, 300 Wis. 2d 61, 729 N.W.2d 206 (explaining that an attorney violated SCR 20:1.16(d) by failing to deliver a client's file to successor counsel for weeks after the request was made and by failing to respond to numerous messages requesting delivery of the file). However, Bauer's claim that trial counsel, following his conviction, violated the supreme court rule requiring counsel to surrender his file does not establish a reasonable likelihood of a different outcome at trial absent that error.

have had a reasonable doubt respecting guilt." *Id.* at 695. We conclude that Bauer has not made that showing here. Because Bauer has not demonstrated any prejudice arising out of any of the individual errors he alleges, he also fails to show any cumulative prejudice. *See Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("We have found each of [the defendant's] arguments to be without substance. Adding them together adds nothing. Zero plus zero equals zero."). Because Bauer fails to demonstrate that trial counsel was ineffective, he has not established that his postconviction counsel was ineffective for failing to bring his current claims of ineffective assistance of trial counsel. *See State v. Ziebart*, 2003 WI App 258, ¶15, 268 Wis. 2d 468, 673 N.W.2d 369.

¶34 Bauer also argues that his postconviction counsel was ineffective by failing to argue the following claims within the framework of alleged prosecutorial misconduct: (1) the prosecutor failed to correct J.H.'s false statement as to her legal name; (2) the prosecutor offered the improperly obtained bottle of lubricant into evidence; and (3) the prosecutor made improper suggestions as to what the nurse examiner's report indicated. He argues that those claims were obvious and clearly stronger than the arguments raised by postconviction counsel in Bauer's direct postconviction motion.

¶35 We conclude that the assertions as to prosecutorial misconduct in the postconviction motion are insufficient to establish ineffective assistance of postconviction counsel for failing to raise those claims earlier. A claim of prosecutorial misconduct requires a showing that the defendant was prejudiced by the alleged misconduct. *See State v. Patterson*, 2010 WI 130, ¶56, 329 Wis. 2d 599, 790 N.W.2d 909. To show prejudice, the defendant must show that the prosecutor's misconduct "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." *See id.*, ¶64. Here, Bauer has not shown that

16

anything about J.H.'s failure to disclose her name change, or the prosecutor's failure to correct J.H.'s use of her prior legal name, "infect[ed] the trial with unfairness." *Id.*

¶36 Bauer has also failed to show that the prosecutor committed any misconduct by introducing the lubricant bottle into evidence. As set forth above, Bauer has not shown that the lubricant bottle was not admissible at trial. Nothing in the postconviction motion establishes that the prosecutor acted improperly in connection with offering the lubricant bottle into evidence or that use of the bottle resulted in any unfairness to Bauer.

¶37 We reach the same conclusion as to Bauer's claim that the prosecutor offered an improper opinion as to the results of the nurse examiner's examination. Bauer cites the portion of closing arguments in which the prosecutor argued that the "results were inconclusive for either confirming or denying that something occurred or happened to her," but that, based on the victim's claims of "[c]ontact with her hand to his penis, contact with her mouth to his penis and insertion of his finger with a lubricant on it into her … anus," that "these are not actions that you would expect to see lots of evidence of something that a [Sexual Assault Nurse Examiner] exam would be able to find" and that "there is no reason why there should have been great injury here." The prosecutor's argument as to what the prosecutor believed the evidence showed was not improper. *See State v. Cockrell*, 2007 WI App 217, ¶41, 306 Wis. 2d 52, 741 N.W.2d 267 ("A prosecutor may comment on evidence and argue from it to a conclusion."). Because we reject each claim of prosecutorial misconduct, we also reject Bauer's claim of cumulative error based on those claims.

¶38 In sum, Bauer's postconviction motion presents only conclusory or unsupported allegations, without sufficient facts to establish that Bauer's trial

17

counsel was ineffective or to establish prosecutorial misconduct. Accordingly, Bauer has not shown that his postconviction counsel was ineffective for failing to raise those claims in Bauer's direct postconviction motion. We therefore conclude that the circuit court properly denied the postconviction motion without a hearing. *See Allen*, 274 Wis. 2d 568, ¶9.

*By the Court.—*Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.